IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LUIS VASQUEZ,                                          OPINION AND
                                                       ORDER
                    Plaintiff,
                                                       05-C-528-C
          v.

MATTHEW FRANK, GARY McCAUGHTRY,
MARC CLEMENTS, CURTIS JANSSEN,
STEVEN SCHUELER, BELINDA SCHRUBBE,
GARY ANKARLO, RICK RAEMISCH, JAMES
MUENCHOW, JOHN McDONALD, GEORGE
KAEMMERER and DR. LARSON,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

          This is a civil action for monetary, declaratory and injunctive relief, brought pursuant

to 42 U.S.C. §1983.  Plaintiff Luis Vasquez is an inmate at the Waupun Correctional

Institution in Waupun, Wisconsin.   He alleges that defendants violated his Eighth

Amendment rights by subjecting him to constant illumination, inadequate ventilation and

extreme heat and by depriving him of necessary medication.  (Both sides raise other issues

in their summary judgment materials, most notably the general quality of the mental health

treatment plaintiff received.  Because plaintiff was not allowed to proceed on the issue, dkt.

# 20 at 8-10, I have disregarded any evidence or argument on that issue.)

1

Defendants filed a motion for summary judgment, which is now ripe for review.  I conclude that defendant's motion must be granted in full.  Plaintiff has failed to produce evidence from which a reasonable jury could infer that the constant illumination, extreme heat or inadequate ventilation subjected him to a substantial risk of serious harm or that the defendants were deliberately indifferent to any risk that may have been present.  Further, I conclude that plaintiff did not exhaust his administrative remedies relating to his claim for deprivation of necessary medication.

The undisputed facts are set forth below.  All of these facts are taken from defendant's proposed findings of fact because plaintiff did not file any proposed findings of his own.  He did, however, file a lengthy affidavit and a response to defendant's proposed findings of fact.  According to the summary judgment procedures of this court (which plaintiff received with the preliminary pretrial conference order March 29, 2007), I may not consider any evidence not included in a proposed findings of fact or any new facts in a response that are not directly responsive to original proposed facts.  Procedures to be Followed on Motions for Summary Judgment, II.D.4.  Accordingly, I considered plaintiff's affidavit only in considering whether he has properly disputed plaintiff's proposed findings.

Plaintiff should know that he is not prejudiced by this procedure.  My review of his affidavit showed that it did not contain evidence that could defeat defendant's motion for summary judgment.  To prevail on his claims, plaintiff would have had to adduce admissible

2

evidence showing a causal link between his cell conditions and his alleged injuries.  Because plaintiff's affidavit does not include any such evidence, considering the affidavit would make no difference to the outcome.

FACTS

A.  <u>Parties</u>

Plaintiff is an inmate at the Waupun Correctional Institution in Waupun, Wisconsin. He was confined to the health and segregation complex from December 20, 2002 to January 3, 2006 and again from November 4, 2006 to the present.  Defendant Matthew Frank was Secretary of the Wisconsin Department of Corrections.  Defendant Richard Raemisch was Deputy Secretary of the Department of Corrections.  (Defendant Frank has since left the Department of Corrections.  Defendant Raemisch is now Secretary.)

The following defendants are employed at the Waupun Correctional Institution in the following capacities: Marc Clements, Deputy Warden (Corrections Security Director until March 2006); Belinda Schrubbe, Health Service Manager of the Health Services Unit; Gary Ankarlo, Supervisor of the Psychological Services Unit; James Muenchow, Institution Complaint Examiner; and John McDonald, Social Worker/Advocate.

The following defendants are no longer employed at Waupun Correctional Institute but were employed at the institution in the following capacities when the plaintiff's

3

complaints allegedly occurred: Gary McCaughtry, Warden until November 2004; Curtis Janssen, Supervising Officer 2 until March 2007; Steven Schueler, Supervising Officer 2 until December 2007; and Dr. Charles Larson, physician.

## B. 24-Hour Illumination

The lighting fixture in each cell in the health and segregation complex has a total of four fluorescent tubes.  Three of the tubes are 32-watt T8 tubes that the inmate can turn on and off.  The fourth tube is a 9-watt fluorescent nightlight that is illuminated at all times.  The illumination from the nightlight has been measured at one-foot candle but may vary among cells because of the age and brand of fluorescent tubes.  Inmates are permitted to use a towel or clothing to cover their eyes at any time.

Plaintiff first complained of symptoms related to the constant illumination by submitting a health services request in June 2004.  His alleged symptoms included migraines, headaches, pain in the eyes and blurry vision.  The request also stated that the conditions in his cell were causing him to experience anxiety, depression, decreased appetite, and weakness.  Plaintiff complained that the nightlight made sleep difficult or impossible.

Plaintiff filed an official inmate complaint about the 24-hour illumination on July 1, 2004.  In defendant Muenchow's  recommendation for dismissal of plaintiff's complaint, he noted that constant illumination is  necessary because staff must be able to observe inmates

4

at all times.  Defendant McCaughtry accepted Muenchow's recommendation and dismissed plaintiff's complaint.

Plaintiff was seen by a nurse clinician on July 2, 2004 for symptoms allegedly caused by the constant illumination.  One week later, staff gave plaintiff a two-month prescription to treat his migraines.  Plaintiff renewed his complaints about the illumination in a February 2005 letter to defendant Clements.  In the letter, plaintiff alleged he could not sleep because of the 24-hour illumination.  Clements instructed plaintiff to discuss his health concerns with the Health Services Unit.  Plaintiff filed a second inmate complaint about the 24-hour illumination in April 2005.  The complaint was dismissed on the grounds that plaintiff's complaints had been raised and addressed.

After three months at the Wisconsin Resource Center, plaintiff returned to the general population of the Waupun Correctional Institute on April 4, 2006.  He returned to the health and segregation complex on November 4, 2006.  Plaintiff reported eye sensitivity to a prison psychologist on December 28, 2006.  The psychologist consulted Health Services and psychiatry regarding possible psychological concerns related to plaintiff's vision sensitivity and found that they were unaware of plaintiff's complaints.

In June 2007, plaintiff wrote to defendant Schrubbe complaining of frequent headaches, eye pain and blurry vision.  A sick call appointment was scheduled to address plaintiff's complaints.  The appointment was cancelled when prison staff determined

5

plaintiff was refusing treatment.  Plaintiff was seen by health services for his complaints about headaches, blurred vision and eye pain on July 2, 2007.  The staff prescribed medication for his symptoms.

## C.  Ventilation and Cell Temperatures

The temperature and humidity on the housing ranges at Waupun Correctional Institute are monitored.  The cells in the health and segregation complex usually are between 10 and 20 degrees cooler than the temperatures outside during the warm months.  The ventilation system circulates air through the vents to prevent the feeling of stale air.  At all times relevant to this action, the cooling and ventilation systems were operating.

In June 2004, plaintiff complained to health services staff that the ventilation in his cell was causing bad odors, stale air, dry air and hot temperatures.  On July 12, 2004, he filed an official inmate complaint stating that the ventilation in his cell was "bad" and that the temperature was too hot.  In responding to plaintiff's complaint, defendant Muenchow found that the cooling and ventilation system were operating and that the air system had not malfunctioned.  Muenchow also noted that the temperature and humidity were monitored and there was no evidence that plaintiff was being subjected to adverse conditions.  The complaint was dismissed.

Plaintiff was seen by health services staff for complaints of nasal congestion and nose

6

bleeds allegedly caused by dry air on August 23, 2004.  Nasal spray was prescribed to treat plaintiff's symptoms.  In February 2005, plaintiff complained again that the poor ventilation was causing him to experience dizziness, stuffy nose, nose bleeds and to spit up blood. Defendant Clements responded to plaintiff's concerns by suggesting plaintiff discuss his health problems with the Health Services Unit.

### D.  Administrative Exhaustion

Plaintiff followed the prison's administrative process for filing inmate complaints and appeals relating to his illumination and ventilation complaints.  Plaintiff did not file an inmate complaint alleging that defendant Larson deprived plaintiff of necessary medication.

### OPINION

### A. Standard of Review

Summary judgment is proper when the moving party shows that even when all inferences are drawn in favor of the non-moving party, there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In other words, the court decides "whether the evidence presents a sufficient disagreement to require a submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson

7

v. Liberty Lobby, 477 U.S. 242, 255 (1986). In order to refute the moving's party showing that there is no genuine issue as to any material facts, the non-moving party must set forth specific facts. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving party must present enough evidence that a jury could reasonably find in their favor. Anderson, 477 U.S. at 251-52. If the nonmovant fails to produce evidence that shows the existence of an essential element on which the party bears the burden of proof at trial, the moving party shall prevail at summary judgment. Celotex, 477 U.S. at 322.

## B. Administrative Exhaustion

The 1996 Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Court of Appeals for the Seventh Circuit has held that "[e]xhaustion of administrative remedies, as required by § 1997e, is a condition precedent to suit." Dixon v. Page, 291 F.3d 485, 488 (7th Cir. 2002); Perez v. Wisconsin Dept. of Corrections, 182 F.3d 532, 535 (7th Cir. 1999). "[I]f a prison has an internal administrative grievance system through which a prison can seek to correct a problem, then the prisoner must utilize that administrative system before filing a

8

claim." <u>Massey v. Helman</u>, 196 F.3d 727, 733 (7th Cir. 1999). Exhaustion has not occurred unless an inmate follows the rules that the state has established governing the administrative process. <u>Dixon</u>, 291 F.3d at 491; <u>Pozo v. McCaughty</u>, 286 F.3d 1022, 1025 (7th Cir. 2002). In other words, the inmate must file complaints and appeals in the place and at the time, the prisoner's administrative rules require. <u>Id.</u> at 1025.

Wisconsin inmates have access to an administrative grievance system governed by the procedures set out in Wis. Admin. Code §§ DOC 310.01-310.18. Under these provisions, prisoners begin the complaint process by filing an inmate complaint with the institution complaint examiner. Wis. Admin. Code § DOC 310.09. An institution complaint examiner may investigate the inmate complaint, reject it for failure to meet filing requirements or recommend to appropriate review authority that it be granted or dismissed. Wis. Admin. Code § DOC 310.07(2). If a complaint is rejected, the inmate may appeal the rejection to the appropriate reviewing authority, who can review only the reason for the rejection but not the merits of the complaint. Wis. Admin. Code § DOC 310.11(6).

It is undisputed that plaintiff did not file an inmate complaint regarding his claim that defendant Larson deprived him of necessary medication. However, plaintiff argues that he satisfied the administrative exhaustion requirement by submitting written complaints to defendants Clements, Ankarlo and McDonald. Plaintiff contends that because defendants had actual notice of his complaint, he satisfied the exhaustion requirement.

9

Whether or not defendants had actual notice of plaintiff's complaint that he was being denied medication, their actual notice does not relieve plaintiff of his obligation to follow the specific procedures established by the State of Wisconsin for exhaustion of his administrative remedies. Pozo, 286 F.3d at 1025. A prisoner cannot decide for himself how to exhaust his administrative remedies.

The state's procedures require a prisoner to file an inmate complaint with an institution complaint examiner. Wis. Admin. Code § DOC 310.09. It is undisputed that plaintiff did not do so. Therefore, defendant's motion for summary judgment on the claim that defendant Larson deprived plaintiff of necessary medication must be granted.

## C. Eight Amendment Violations

### 1. Eighth Amendment standard for prison conditions

The Eighth Amendment's prohibition on "cruel and unusual punishment" establishes the minimum standard for the treatment of prisoners by prison officials. "Cruel and unusual punishment" is demonstrated by the "unnecessary and wanton inflictions of pain," including pain that is inflicted "totally without penological justification." Hope v. Pelzer, 536 U.S. 730, 737 (2001). Although this is the general standard that applies to all types of Eighth Amendment claims, it is applied differently depending on the claim involved. For claims involving conditions of confinement, the question is whether the petitioner has been

10

subjected to a substantial risk of serious harm and whether prison officials were deliberately indifferent to the risk.  Farmer v. Brennan, 511 U.S. 825, 847 (1994).

Deliberate indifference requires that a prison official "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and actually "draw the inference."  Farmer, 511 U.S. at 837.  Deliberate indifference is evidenced by a defendant's actual intent or reckless disregard for a prisoner's health or safety, and must amount to highly unreasonable conduct or a gross departure from ordinary care in a situation in which a high degree of danger is readily apparent.  Benson v. Cady, 761 F.2d 335, 339 (7th Cir. 1985).

2.  Cell illumination

Plaintiff has alleged that the constant illumination of his cell aggravated his mental illness and caused him to suffer insomnia, migraines, headaches, pain in the eyes and blurry vision.  "A condition of an inmate's confinement such as constant illumination violates the Eighth Amendment if it denies the inmate 'the civilized measure of life's necessities,' and is the result of deliberate indifference by prison officials."  King v. Frank, 371 F. Supp. 2d 977, 984 (W.D. Wis. 2005) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

In order to succeed on a claim of illegal illumination, plaintiff must produce evidence that the constant illumination had harmful effects on his health beyond mere discomfort.

Farmer, 511 U.S. at 834 ("the deprivation alleged must be, objectively, "sufficiently serious"; a prison official's act or omission must result in the denial of "the minimal civilized measure of life's necessities". . . . the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm") (internal citations omitted). Plaintiff has failed to make the necessary showing at a time when he must do so. Schacht v. Wisconsin Dept. of Corrections, 175 F.3d 497, 504 (7th Cir.1999) (summary judgment "is the 'put up or shut up' moment in a lawsuit").

Plaintiff was treated by health service for headaches, migraines, sleep problems and a psychological mood disorder. However, there is no factual support for plaintiff's assertion that the constant illumination caused or exacerbated his medical problems. In other words, the fact shows only that plaintiff was subjected to 24-hour illumination, he complained of symptoms, some of his symptoms were treated by health services and plaintiff believes that the symptoms were caused by the conditions of the segregation unit. Plaintiff's subjective belief alone does not create a causal link between the illumination and his symptoms. Powers v. Dole, 782 F.2d 689,695 (7th Cir. 1986 ) ("Conclusory allegations that have no factual support are insufficient to create a genuine issue of material fact.")

Even if plaintiff could prove that constant illumination subjected him to a substantial risk of serious harm, summary judgment would be appropriate nevertheless because he has not demonstrated that defendants failed to respond reasonably to any risk of harm that

12

constant illumination might cause.  Defendants permitted plaintiff to cover his eyes with a towel or washcloth at all times.  In the absence of evidence showing the accommodation to be ineffective, it is a reasonable response to any risk posed by the constant lighting.  Plaintiff does not suggest that using a towel would be ineffective, only that it is "uncomfortable." Because the constitution does not require comfortable conditions, this objection cannot carry the day for plaintiff.

Also, the facts show that defendants keep the cells lit at all times because of a need to monitor what is happening in the cells.  Plaintiff adduces no evidence that defendants could meet their security needs without constant illumination.  If defendants have no meaningful alternative to 24-hour lighting, this provides yet another reason for concluding that defendants are not violating plaintiff's Eighth Amendment rights.  King, 371 F. Supp. 2d at 985, (citing Bruscino v. Carlson , 854 F.2d 162, 165 (7th Cir. 1988) ("If order could be maintained in [United States Penitentiary in Marion, Illinois] without resort to the harsh methods attacked in this lawsuit, the plaintiff would have a stronger argument that the methods were indeed cruel and unusual punishments.")).

3.  Ventilation and extreme heat

Prisoners have a right to adequate ventilation and freedom from extreme temperatures.  Shelby County Jail Inmates v. Westlake, 798 F.2d 1085, 1087 (7th Cir.

13

1986).  However, this right is not equivalent to a right to be free from all discomfort.  Id.; see also Hudson v. McMillan, 503 U.S. 1, 9 (1992) ("routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society'")(internal citation omitted).  The same Eighth Amendment standard applies to ventilation and cell temperature as to other conditions of confinement:  whether the condition subjected the inmate to a substantial risk of serious harm and whether defendants were deliberately indifferent to the risk.  Murphy v. Walker, 51 F.3d 714 (7th Cir. 1995).

In order to succeed on a claim of extreme cell temperatures, plaintiff must adduce evidence that the temperature in his cell was extreme during the time in question and that the extreme heat subjected him to a substantial risk of serious harm.  Plaintiff has failed to adduce admissible evidence about the actual temperature of his cell or establish that the temperature he experienced subjected him to a substantial risk of serious harm.  In fact, neither side proposed any facts about the length of time plaintiff was exposed to any particular temperature.  As for the inadequate ventilation, plaintiff presents no evidence regarding the air quality in his cell.

The law does not draw a clear line between temperatures that are merely uncomfortable and those that are inhumane or unhealthy.  Of course, there reaches a point when heat is so excessive that the risk to an inmate's health is obvious.  Brock v. Warren County, Tennessee, 713 F. Supp. 238 (E.D. Tenn. 1989) (defendants violated Eighth

14

Amendment when  62-year old inmate died after being exposed to temperatures up to 110 degrees in cell with no ventilation and high humidity).  In this case, however, the available evidence does not suggest that temperatures in plaintiff's unit were extreme.

The cooling and ventilation system was operating during the time plaintiff was in the segregation unit.  The system regulates the temperature of the cells to be approximately 10-20 degrees cooler than outside during summer months.  Plaintiff disputes this fact in his affidavit by asserting that the temperature in his cell occasionally exceeded 100 degrees during the summer months.  Although plaintiff is certainly qualified to testify regarding how he *felt* when the weather was hot (and plaintiff has submitted virtually no evidence on this point), he is not a climatologist and he gives no indication in his affidavits that he used any equipment to gauge their cell temperatures.  Without a basis for a conclusion that the cell temperatures were as hot as plaintiff says they were, I cannot consider this evidence.

Even assuming that a lay person is qualified to testify about temperatures, plaintiff has failed nonetheless to adduce any evidence regarding *how long* he believed his cell was hotter than 100 degrees.  Short-term exposure to such temperatures would not violate the Eighth Amendment by itself.  Compare Wilson v. Seiter, 893 F.2d 861, 864 (6th Cir.1990) (occasional exposure to 95 degree heat did not violate Eighth Amendment), vacated on other grounds, 501 U.S. 294 (1991) with Dixon, 114 F.3d 640 (summary judgment improper on Eighth Amendment claim when plaintiff produced evidence that he was subject to near

15

freezing temperatures over course of four winters).

Plaintiff's claim regarding adequate ventilation also fails for similar reasons.  It is undisputed that the prison ventilation system was functioning properly during the times relevant to plaintiff's complaints.  Plaintiff refutes the adequacy of the ventilation, relying on the way it felt to him and other prisoners.  Again, although plaintiff can testify to how he felt, he is not qualified to give an opinion of the actual quality of the ventilation. Without any basis for finding that the air quality was so poor as to constitute a risk to plaintiff's health, I cannot find a genuine issue of material fact regarding the adequacy of the ventilation.

Plaintiff failed to provide evidence in support of this claim, as required to survive a motion for summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("plaintiff could not rest on his allegations . . . without any significant probative evidence tending to support the complaint") (internal citation omitted).   Defendant's motion for summary judgment will be granted as to plaintiff's claim of inadequate ventilation and extreme heat.

Because plaintiff has not adduced sufficient evidence to permit a reasonable jury to find in his favor on any of his claims, it is unnecessary to address whether defendants are entitled to qualified immunity or to dismissal based on their lack of personal involvement.

16

ORDER

IT IS ORDERED that defendants' motion for summary judgment is GRANTED.  The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 2d day of November, 2007.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

17